UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Kenneth Edward Price II,
    Plaintiff,
  v.
Kenneth McGinnis, Bruce Forstrom, Robert Wood, Steve Niemi,
Dave Perry, Robb Mackenzie, Rudy Moilanen, Edward Anderson,
? Lauralla (First Name Unknown),
    Defendants.

Case No. _____

Hon. _____

Mag. _____

2:01-cv-139
[stamp] U.S. District Judge

Timothy P. G_____
U.S. Magistrate Judge

## Civil Action

This is a civil rights action filed pursuant to 42 U.S.C. § 1983, by Plaintiff(Pltf.), Kenneth E. Price II, a state prisoner, seeking monetary damages, injunctive and declaratory relief. Pltf. alleges infringement of Free Speech Rights in violation of the 1st Amendment to the U.S. Constitution; Excessive Use of Force and Denial of Medical Care in violation of the 8th Amendment to the U.S. Constitution; and. Denial of Due Process in violation of the 14th Amendment to the U.S. Constitution. Pltf. further alleges state law torts of Assault and Battery, Gross Negligence, Willful Misconduct, Wanton Misconduct, and Intentional Infliction of Emotional Distress.

## Jurisdiction

1. This Court has Jurisdiction of this civil rights action pursuant to 28 U.S.C. § 1343(a), and 28 U.S.C. § 1331.

2. This Court has Supplemental Jurisdiction over Pltf's. state law tort claims pursuant to 28 U.S.C. § 1367(a).

## Venue

3. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to Pltf's. claims occurred within the Western District of Michigan and the Deft's. reside in this District.

## Parties

4. Pltf. is presently incarcerated at Baraga Maximum Correctional Facility (AMF), located in the County of Baraga.

5. Defendant(Deft.) McGinnis was employed as the Director of the Michigan Department of Corrections at all times relevant to this action. He is sued in his Individual Capacity.

6. Deft. Forstrom was employed at AMF, as the Warden, at all times relevant to this action. He is sued in his Individual Capacity.

7. Deft. Perry is employed at AMF. At all times relevant to this action, Deft. was and is employed as a Sergeant. He is sued in his Individual Capacity.

8. Deft. Wood was employed at AMF as an ADW(Assistant Deputy Warden), at all times relevant to this action. He is sued in his Individual Capacity.

9. Deft. Niemi was employed at AMF as the Unit 1 RUM(Regular Unit Manager), at all times relevant to this action. He is sued in his Individual Capacity.

10. Deft. Mackenzie is employed at AMF. At all times relevant to this action, Deft. was and is employed as a Correctional Officer(C/O). He is sued in his Individual and Official Capacities.

11. Deft. Moilanen is employed at AMF. At all times relevant to this action, Deft. was and is employed as a C/O. He is sued in his Individual and Official Capacities.

12. Deft. Anderson is employed at AMF. At all times relevant to this action, DEft. was and is employed as a C/O. He is sued in his Individual Capacity.

13. Deft. Lauralla was employed at AMF as a REgistered Nurse(RN), at all times relevant to this action. She is sued in her Individual and official Capacities.

14. Deft's. acted under "color of State Law" at all times relevant to this action.

Facts

15. On August 9, 1998, Pltf. was housed in Administrative Segregation Unit 1, C-Wing, cell 126.

16. On said date, at approximately 8:10 A.M., Deft. Mackenzie came to said cell to escort Pltf. to the segregation yard.

17. Deft. Mackenzie opened the upper food slot on said door and applied the restraints, which composed of a strap approximately 4 feet in length - connected to a pair of handcuffs, behind Pltf.

18. After applying said restraints, Deft. Mackenzie opened said door and Pltf. backed out into the hall and said Deft. gave Pltf. a pat search, then closed said door.

19. As Pltf. and Deft. Mackenzie proceeded to said yard, and began walking up the stairs from C-Wing, Pltf. asked Deft. Perry why [Deft.] Moilanen passed [me] up to go to yard?

20. Deft. Perry responded, "Just be happy your going out, now shut up!"

21. In response, Pltf. stated to Deft. Perry, [I] don't want to hear it!"

22. At that time, Deft. Mackenzie jerked the restraint strap and stated to Pltf., " Don't talk to him like that or I'm going to take you down to the ground, punk. You're going back to your cell!"

23. On the way back to said cell, Deft. Mackenzie threatened Pltf. 3 more times about taking him down to the ground.

24. When Pltf. and Deft. Mackenzie reached said cell, Deft. Anderson opened said door.

25. As Pltf. was entering said cell, Deft. Mackenzie pushed Pltf. in the shoulder

blades - causing Pltf. to hit his head against the steel door frame.

26. Immediately thereafter, Pltf. turned around and kicked Deft. Mackenzie in his right shin, to preclude any more assaults by said Deft.

27. Immediately after Pltf. acted in self-defense, he turned back around and entered said cell.

28. At that time, Deft. Mackenzie jerked the restraint strap in an upward direction, then brought the restraint strap around said door and through said slot, then pulled with an extreme amount of force - causing Pltf. to slam against said door, as it was closing.

29. Deft. Mackenzie continued to pull said strap, thus, trying to force Pltf's. arms through said slot backwards, but could not as Pltf's. arms were crossing the width of said slot.

30. While Deft. Mackenzie continued to pull said strap, Deft. Moilanen grabbed both of Pltf's. arms and forced them through said slot, thus, bringing Pltf. to his knees as his triceps scraped along the top of said slot.

31. As Pltf's. arms were extended through said slot, backwards, Deft. Mackenzie continued to pull said strap, moving in an upward direction, nearly breaking Pltf's. wrists and arms, causing severe pain in his shoulders.

32. At that time, Deft. Moilanen grabbed Pltf's. right hand and pushed it forward with such force, the tips of Pltf's. fingers nearly touched his wrist, simultaneously causing severe pain in his wrist and hand.

33. Approximately 2 minutes after Deft's. Mackenzie and Moilanen caused unjustified and severe pain to Pltf., the restraints were removed.

34. Deft. Moilanen then grabbed both of Pltf's. arms and drove them into said cell.

35. Deft. Perry, a supervisory level employee, did not intervene to stop such physical abuse, as he watched the incident unfold.

36. Deft. Anderson also stood by and watched the incident unfold and did nothing to prevent such physical abuse.

37. Pltf. then told Deft. Perry that he wants to see the nurse, in which Deft. Lauralla did come to see Pltf.

38. Pltf. told Deft. Lauralla that he wants to see the Doctor, get x-rays, be given something for the pain he was experiencing, and for her to document the bruises, cuts, abrasions, and swelling on both of his wrists, the marks and cuts on his triceps, and the bruise on the inner side of his right bicep.

39. Deft. Lauralla stated to Pltf. that she was not giving Pltf. anything for the pain, was not going to document anything, nor scheduling Pltf. to see the Doctor.

ADMINISTRATIVE REMEDIES

40.  On August 11, 1998, Pltf. exhausted his administrative remedies by filing a grievance concerning the unnecessary use of force and denial of medical care. Deft's. Niemi, Forstrom, and McGinnis responded to said grievance at the 1st, 2nd, and 3rd Steps, respectively. At each step, said Deft's. denied Pltf. any relief, but approved of the alleged Constitutional violations stated above.

### A. UNLAWFUL, WILFUL, WANTON, RECKLESS, DELIBERATE AND GROSSLY NEGLIGENT CONDUCT

41.  The Deft's and each of them, their actions were performed in an unlawful, wilful, wanton, reckless, deliberate and grossly negligent conduct and total disregards to Pltf's. rights, privileges, and immunities.

### B. HARM, DAMAGE, INJURY AND LOSS

42.  As a proximate result of Deft. Mackenzie pushing Pltf., causing him to hit his head on the steel door frame, resulted in Pltf's. forehead to receive a swollen lump that was manifest for approximately 6 days. Pltf. further incurred mild to severe headaches for approximately 4 days.

43.  As a proximate result of Deft. Mackenzie's actions with said restraints, the skin on both of Pltf's. wrists was ripped off at several locations - around and the circumference of said wqrists, at the palm areas, and top of both of Pltf's. hands. Said injuries also resulted in bruising and swelling at the wrist and hand areas described above. Pltf. further experienced extreme pain in his wrists and hands for approximately 12 days. And as an everlasting result, Pltf's. wrists are permanently damaged by way of being easily marked.

44.  As a proximate result of Deft. Moilanen's actions, the skin on both of Pltf's. triceps were ripped off at various locations from being scraped along the top of the food slot, that lasted approximately 7 days, which also resulted in Pltf. receiving a bruise on the inner side of his right bicep.

45.  As a proximate result of Deft. Moilanen bending Pltf's. right hand forward, Pltf. experienced extreme pain in his right hand and wrist for approximately 16 days.

46.  That to this day, the physical pain that Deft's. Mackenzie and Moilanen inflicted on Pltf., often manifests itself - causing Pltf. severe discomfort.

47.  As a proximate result of Deft. Lauralla's actions, by being deliberately indifferent to Pltf's. serious medical needs, such indifference resulted in Pltf. being subjected to the unnecessary and wanton infliction of pain.

48.  As a proximate result of Deft's. Mackenzie, Moilanen, Anderson, Perry, and Lauralla's actions, inactions, acts and/or omissions, Pltf. has suffered and in the absence of relief will continue to suffer physical and mental pain, severe emotional distress, mental anguish

and malfunction, grief, anger, depression, discomfort, worries, intimidation, harassment, humiliation, loss of sleep, nightmares, and self-dignity. Pltf. has otherwise been subjected to irreversible, irreparable, and permanent harm, damage, and injuries lost at the hands of said Deft's.

## C. DUTY OWED TO PLAINTIFF

49. Pltf. contends that all times relevant hereto, Deft's. Mackenzie, Moilanen, Anderson, Perry, and Lauralla did have a legal duty owed to Pltf. based on the doctrine of Promissory Estoppel. As such, a special relationship existed between said Deft's. and Pltf. in the Department of Corrections Policy Directives(PD), Administrative Rules(R), and Michigan Compiled Laws(MCL). For example, PD 01.01.100 - <u>Statement of Purpose</u>, states at p. 1., II. <u>Policy</u>:<u>Mission Statement</u>, A. ..., as directed by Courts, carrying out the sentence given to convicted adult felons in a humane,...manner which is consistent with sound correctional principles and Constitutional standards. At p. 2., <u>Department Values</u>, 3. ....treatment of persons under sentence must be fair and positive ....; <u>Guiding Principles</u>, I. Employees will be guided by the following principles in carrying out their assignments. 1. Service is our code. Each employee will provide the highest quality of service to ... the offender's under the Department's supervision. When staff conduct their daily activities and interact with others, it shall be done in a professional way...; 4. ....Employees shall perform to the best of their ability and shall be responsible for their behavior and for fulfilling the personal and professional commitments they make. PD 03.03.130 - <u>Humane Treatment and Living Conditions for Prisoners</u>, states at p. 1., I. <u>Policy Statement</u>: All prisoners committed to the jurisdiction of the Department shall be treated humanely and with dignity in matters of health care, personal safety and general living conditions. At p. 2. <u>Health Care</u>: G. Health care, including psychological services, shall be available to prisoners consistent with contemporary standards of medical practice in the community,.... Health care shall be available, accessible and organized for delivery in a humane, cost-effective and efficient manner.; H. All serious ill or injured prisoners shall receive prompt medical attention as set forth in PD 04.06.105 "Medical Emergencies." At p. 2. Protection from mental or physical abuse,... I. To prevent abuse of prisoners, the following safeguards shall apply: 3. Prisoners shall be provided reasonable safety from assaults.; 6. Staff shall not use or engage in, and shall discourage through appropriate means any person's use of derogatory, demeaning, humiliating, or degrading actions...towards others.; J. Prisoners shall not be subjected to personal abuse from staff.....; K. Staff have a responsibility to protect the lives of...prisoners,.... The following are prohibited: 1. Corporal punishment.; 3. Any act of lack of care, whether by willful act or neglect, that injures or significantly impairs the health of any prisoner.; 4. Willful infliction of mental distress, degradation, or humiliation. PD 03.03.105 - <u>Right to Freedom from Discrimination</u>, at p. 1., I. <u>Policy Statement</u>: To protect clients from discrimination by ensuring that each client is afforded fair and equal treatment.... R 791.2205 - <u>Warden; Head of the Office of Residential and</u>

Electronic Programs; Appointment; Duties. Rule 205. (1) For each institution, the director shall appoint a warden to be responsible for the institution. The warden shall do all of the following: (a) Control and govern the institution and be responsible for discipline at the institution....; (g) Ensure that department standards of safety, security, and humane treatment are met. MCL 791.203 - Commission; Director of Corrections, Qualifications, Salary, Powers and Duties. Sec. 3. ...the director shall have full power and authority to supervise and control the affairs of the department.... MCL 791.206 - Promulgation of Rules. Sec. 6. The director may promulgate rules...which may provide for all of the following: (d) The management and control of state penal institutions. PD 04.06.105 - Medical Emergencies. III. Policy:Emergency Response, A. Upon discovery a serious ill or injured person shall be given prompt medical attention. Persons first upon the scene shall initiate such emergency first aid as they are qualified to provide,.... I. Investigation. The warden...shall ensure immediate investigation of circumstances surrounding the occurrence of a medical emergency. The Michigan State Police shall be contacted when investigation reveals criminal behavior may be associated with a medical emergency incident and when personal injuries have been inflicted....

From the foregoing, it can be easily inferred that the Deft's. owed Pltf. a duty, that Deft's. breached their duty owed to Pltf., the breach of their duty was the proximate cause of Pltf's. injury's that led to Pltf. being injured, and that Deft's. conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

### D. OATH OF OFFICE

50. Deft's. have sworn an oath of office stating that they will in carrying out their official duties and responsibilities, uphold both the United States and Michigan Constitutions, see e.g., Michigan Constitution 1963, Art. XI, § 1. They have violated such oath of office.

### E. DEMAND TRIAL BY JURY

51. Pltf. demands a trial by jury pursuant to ▓▓▓▓▓▓▓▓▓▓▓▓ the 7th Amendment to the United States Constitution, unless there can be an agreement with the approval of Pltf. prior to such trial.

### FIRST CAUSE OF ACTION

52. The actions of Deft's. Mackenzie and Moilanen in using physical force against Pltf. without need or provocation was not applied in a good faith effort to maintain or restore discipline, But was done maliciously and sadistically for the very purpose of causing harm, which constituted cruel and unusual punishment in violation of the 8th Amendment to the United States Constitution.

## SECOND CAUSE OF ACTION

53. The actions of Deft's. Mackenzie and Moilanen in using physical force against Pltf. without need or provocation constituted the tort of assault and battery.

## THIRD CAUSE OF ACTION

54. The failure of Deft's. Perry and Anderson to take action to curb the physical abuse inflicted on Pltf., constituted deliberate indifference, and contributed to and proximately caused the above described violation of 8th Amendment rights and assault and battery committed by Deft's. Mackenzie and Moilanen.

## FOURTH CAUSE OF ACTION

55. The failure of Deft. Perry to take action to curb the physical abuse inflicted on Pltf. constituted supervisory liability as he implicitly authorized, approved, and knowingly acquiesced in the unconstitutional conduct of Deft's. Mackenzie and Moilanen.

## FIFTH CAUSE OF ACTION

56. The failure of Deft. Lauralla to acquire and give Pltf. any type of pain medication, constituted deliberate indifference by subjecting Pltf. to the unnecessary wanton and infliction of pain in violation of the 8th Amendment to the United States Constitution.

## SIXTH CAUSE OF ACTION

57. Deft's. McGinnis, Forstrom, Wood, and Niemi implicitly authorized, approved, and knowingly acquiesced in the unconstitutional conduct of Deft's. Mackenzie and Moilanen when they did not initiate an investigation and/or discipline Deft's. Mackenzie and Moilanen for their unconstitutional conduct, thus, constituting supervisory liability.

## SEVENTH CAUSE OF ACTION

58. The actions of Deft. Mackenzie violated Pltf's. 1st Amendment right to Free Speech, when said Deft. used physical force/assaulted and battered Pltf., when Pltf. stated to Deft. Perry, "I don't want to hear it."

## EIGHTH CAUSE OF ACTION

59. The actions of Deft's. Mackenzie and Moilanen constituted an Atypical and Significant Hardship beyond that germane to prison life, in violation of the 14th Amendment to the

United States Constitution.

## NINTH CAUSE OF ACTION

60. By Deft's. Mackenzie, Moilanen, and Lauralla's intentional or reckless acts - which amounted to extreme and outrageous conduct, and was the proximate cause for Pltf. to suffer severe emotional distress, constituted the tort of intentional infliction of emotional distress.

## TENTH CAUSE OF ACTION

61. The actions of Deft's. Mackenzie and Moilanen, in their intentional purpose to cause injury to Pltf., constituted the tort of willful conduct.

## ELEVENTH CAUSE OF ACTION

62. The actions of Deft's. McGinnis, Forstrom, Wood, Niemi, Perry, Anderson, and Lauralla, by their recklessness, constituted the tort of wanton conduct.

## TWELFTH CAUSE OF ACTION

63. The actions of all said Deft's. was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted, constituted the tort of gross negligence.

## RELIEF

Wherefore, Pltf. requests that this Court grant the following relief:
  A.  Issue a Declaratory Judgment stating that the Deft's. have violated Pltf's. Constitutional Rights and others afforded to him.
  B.  Issue an injunction ordering said Deft's. to refrain from such unconstitutional conduct and unlawful acts complained of in this complaint.
  C.  Issue an Injunction ordering said Deft's. from retaliating against Pltf. as a result of his pursuit to vindicate his rights.
  D.  Award Compensatory Damages against each Deft. for each of their unconstitutional acts complained of in this complaint, as this Court/Jury deems just and proper.
  E.  Award Punitive Damages against each Deft. for each of their unconstitutional acts complained of in this complaint, as this Court/Jury deems just and proper.
  F.  Award Pltf. Attorney Fees that this Court deems just and proper.
  G.  Grant such other relief that this Court/Jury deems just and proper.

I declare under Penalty of Perjury that the foregoing is true and correct.

                                            Kenneth E. Price II

                                            Kenneth E. Price II      #224957  
                                            Plaintiff in Pro Per  
                                            Baraga Maximum Correctional Facility  
                                            301 Wadaga Road  
                                            Baraga, Michigan   49908-9632

Dated: August 8, 2001.